**LAW OFFICES OF NOLAN KLEIN, P.A.**                      ATTORNEYS & COUNSELORS

**112 W. 34TH STREET, SUITE 1800**
**NEW YORK, NY 10120**
**PH: (646) 560-3230**

**5550 GLADES ROAD, SUITE 500**
**BOCA RATON, FL 33431**
**PH: (954) 745-0588**

www.nklegal.com                                                                              Nolan Klein, Esq.
                                                                                             klein@nklegal.com

June 14, 2023

**VIA ECF**

Honorable Judge James R. Cho
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        *Re:*    *Rivas v. Burger Spot, LLC, et al.*
                 EDNY Case No.: 1:22-cv-06757

Dear Judge Cho:

      Plaintiff, Roberto Rivas ("Plaintiff") and Defendants, Burger Spot, LLC, and John Doe ("Defendants"), respectfully request that Your Honor approve the settlement reached at the settlement conference conducted by Your Honor on April 28, 2023, pursuant to *Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015). A copy of the executed settlement agreement (the "Agreement") is annexed herein as **Exhibit A**.

### Settlement Amount

      The Agreement resolves all claims brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), by payment to Plaintiff in the amount of $20,000.00. This settlement was reached during a settlement conference and was brokered by the Court and was therefore the result of arm's length negotiation. For the reasons outlined below, the Court should approve this settlement as a fair and reasonable compromise of the claims against Defendants in this case.

### Factual Background

      As the Court may recall from the settlement conference, Plaintiff commenced this action alleging that Defendants failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") overtime and minimum wages in violation of the New York Labor Law ("NYLL"), as well as failure to provide written notices required by the Wage Theft Prevention Act ("WTPA").

Plaintiff alleged that he was employed as a laborer and grill man at Defendants' restaurant from May 2021 through April 2022. Plaintiff claims that he worked at least 80 hours per week and was not paid overtime for his work. He also alleges that he was not paid minimum wage for much of his employment. Specifically, Plaintiff alleges that for the first 30 weeks of his employment, he is owed $170 in unpaid minimum wages and $337.50 in unpaid overtime, for a total of $507.50 per week ($15,225 for all 30 weeks). Plaintiff alleges that for the following 18 weeks of employment he is owed $85 in unpaid minimum wages and $337.50 in unpaid overtime ($7,605 for the 18-week period). Finally, for his final three weeks of work, Plaintiff alleges that he is owed $360 per week in overtime premium ($1,080 total). This results in total (unliquidated) FLSA damages in the amount of $23,910.00.

Defendants acknowledged that there was liability but disputed the amount due. In particular, Defendants disputed that Plaintiff worked the number of hours he claims per week, and disputed that he worked the number of weeks he claimed. Furthermore, Defendants were not in a good financial position. The business had incurred significant opening costs which had not yet been recouped, due in part to delays in opening resulting from COVID-19.

The parties engaged in some litigation prior to the settlement conference, including a mediation conference (which ended in impasse) prior to the settlement conference. The parties exchanged significant documentation including time sheets and many text messages and were fully aware of one another's positions in the case. *After the deduction of legal fees and costs* payable to Plaintiff's counsel one third (or $$7,068.66) this results in a settlement payment to Plaintiff of $12,931.34 which is approximately 54% of the full amount sought.

This clearly reflects a reasonable compromise between the parties' disputed positions in this matter. This settlement considers the costs and the uncertainty of protracted litigation.

### **Fairness of the Settlement Agreement**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In evaluating the fairness of the agreement, the District Court may utilize the factors set forth by *Wolinsky,* 900 F. Supp. 2d 332, 335. Those factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

It is respectfully submitted that all *Wolinsky* factors require approval of the settlement agreement. As to the first factor, Plaintiff proposed ultimate recovery (*after* deduction of legal fees) represents a majority of his alleged FLSA damages. *See Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017)(net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2

(S.D.N.Y. 2017) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery). Even absent the significant litigation risks in this case (discussed further below), this clearly represents a fair and reasonable settlement. As to the second factor, this agreement resolves a *bona fide* dispute over genuinely contested issues, namely the lawsuit that Plaintiff brought to recover his unpaid wages. Plaintiff and Defendants believe that is in their best interests to resolve on the current terms rather than to be subject to protracted additional litigation, including the burdens and risks thereof.

Next, as to the third factor, the parties face serious litigation risks as to both liability and damages. Plaintiff risks protracted litigation including as to his dates of employment and hours worked, and Defendants risk paying more than was agreed herein in the form of untold additional legal fees to their own counsel, and if Plaintiff prevails, additional fees to Plaintiff's counsel as well. As to the fourth factor and fifth factor, the arm's length nature of the negotiations, this negotiation was conducted at a settlement conference before the Court itself. All factors thus weigh heavily in favor of *Cheeks* approval. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ("[T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement"); *Hernandez v. C-Penn Foods Inc.*, 2011 U.S. Dist. LEXIS 144798, at *2 (S.D.N.Y. Dec. 13, 2011) ("[G]iven the disputed issues of fact relating to Plaintiff's wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable.").

### **Attorney's Fees and Costs**

As to amount, Plaintiff's Attorney's fees in FLSA matters may be calculated as either (a) a percentage of recovery or (b) as the product of a reasonable hourly rate and the reasonable number of hours expended (the loadstar method). *Flores v. Food Express Rego Park, Inc.*, 2016 U.S. Dist. LEXIS 11351 at *6-7 (E.D.N.Y. 2016) *citing McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). As to the percentage of recovery method "[i]n this Circuit, courts typically approve attorney's fees that range between 30 and 33[percent]." *Thornhill v. CVS Pharm., Inc.*, 2014 U.S. Dist. LEXIS 37007, *3 (S.D.N.Y. 2014); *Briggs v. DPV Transp., Inc.*, 2021 U.S. Dist. LEXIS 245830, *5 (S.D.N.Y. 2021)("Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery"); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. 2013)(same).

Here, Plaintiff's counsel seeks 1/3 of the total recovered as contingency legal fees in this case, or $6,666.66, plus an additional $402.00 representing the filing fee paid to the Clerk of Court. Plaintiff's counsel waives the right to recover anything additional as costs. Because one third as a contingency fee is "commonly approved" in this Circuit, Plaintiff respectfully requests that the contingency fee in this case also be approved as fair and reasonable in this case.

**Conclusion**

      For the foregoing reasons, counsel for all parties jointly and respectfully request that the Court approve the parties' settlement agreement as fair and reasonable and dismiss this action with prejudice. *See Reyes v. Altamarea Group, LLC*, 2011 U.S. Dist. LEXIS 115984, at *14-*17 (S.D.N.Y. 2011).

      Respectfully submitted,

      */s/ Nolan K. Klein*
      Nolan K. Klein, Esq.

cc:    Joshua Androphy, Esq. (via ECF)